# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                            )
**MIGUEL FERNANDES,**                       )
                                            )
      **Petitioner,**             )
                                            )    Crim. Action No.
      v.                         )    14-10019-FDS
                                            )
**UNITED STATES OF AMERICA,**               )
                                            )
      **Respondent.**            )
_____ )

# MEMORANDUM AND ORDER
# ON PETITION FOR A WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Petitioner Miguel Fernandes pleaded guilty on January 7, 2016, to conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846; possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii); and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). He was sentenced to a 144-month term of incarceration followed by a four-year term of supervised release.

Petitioner has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging that the government breached a contractual obligation pursuant to the plea agreement when it objected to an additional one-point downward departure under the sentencing guidelines for acceptance of responsibility. Petitioner also alleges ineffective assistance of counsel in violation of the Sixth Amendment due to trial counsel's alleged (1)

failure to advise him correctly as to the sentencing guideline for acceptance of responsibility, U.S.S.G. § 3E1.1(b); (2) failure to object to the Court's guideline calculation under § 3E1.1(b); and (3) failure to challenge the government's improper withholding of a § 3E1.1(b) motion. For the reasons set forth below, the motion will be denied.

## I.      Background

### A.      Factual Background

Because the conviction resulted from a guilty plea, the following facts are taken from the April 8, 2016 sentencing hearing and the Presentence Investigation Report ("PSR"), unless otherwise noted. *See United States v. Connell*, 960 F.2d 191, 192-93 (1st Cir. 1992); *United States v. Garcia,* 954 F.2d 12, 14 (1st Cir. 1992).

Under the guise of several aliases, for several years Fernandes sent drugs, including marijuana and cocaine, from California into Massachusetts via Miracle Mail, a commercial mail receiving agency. (PSR at ¶¶ 8, 43). He mailed numerous packages to uninhabited addresses, using foam insulation to conceal the drugs inside. (*Id.* at ¶ 43).

In December 2012, the United States Postal Service (USPS) intercepted two Priority Mail packages addressed to fictitious individuals in Middleboro, Massachusetts. (*Id.* at ¶¶ 21-22). Co-conspirator Alex Junior Gomes attempted to retrieve the packages at the USPS Lakeville Annex. (*Id.* at ¶¶ 8, 23-25). After a postal inspector obtained a search warrant, one of the packages was opened and tests confirmed that the package contained two kilograms of cocaine. (*Id.* at ¶ 26). The second package was returned to the location from which it was mailed, a Miracle Mail office in Los Angeles. (*Id.* at ¶ 27).

The following month, in early January 2013, a postal inspector spoke on the telephone with a man identifying himself as "Steven Sanchez" who claimed that the package returned to

Miracle Mail was addressed to his aunt. (*Id.* at ¶ 30). "Steven Sanchez" also claimed that the package containing cocaine, which postal inspectors had already opened, contained a humidifier for his aunt. (*Id.*). DEA Special Agent Carl Rideout listened to a recording of the conversation and identified "Steven Sanchez" as Fernandes, whose voice Agent Rideout had come to recognize during the course of the investigation. (*Id.* at ¶ 31). Fernandes's then-girlfriend, Latresea Chennette, also identified the voice of "Steven Sanchez" as that of Fernandes. (*Id.* at ¶ 32).[1]

In addition, packages were mailed from Los Angeles to fictitious individuals in New Bedford, West Bridgewater, and other towns in the greater Boston area. (*Id.* at ¶¶ 34, 38). Gomes was observed on several occasions at these addresses retrieving the packages. (*Id.* at ¶ 34). Frequently, Gomes would retrieve packages left at the front of the addresses, place them in his vehicle, and drive away. (*Id.* at ¶ 35).

On January 27, 2014, search warrants were executed at several locations in Los Angeles. (*Id.* at ¶ 40). Police discovered that Fernandes's storage locker in Los Angeles contained marijuana with a net weight of 520 kilograms. (*Id.* at ¶¶ 8, 40-41). Although pursuing agents initially lost sight of Fernandes, he was arrested the following day. (*Id.* at ¶¶ 1, 40).

Fernandes, along with at least five other co-conspirators, also conspired to launder drug proceeds. (*Id.* at ¶ 9). Fernandes used several "funnel accounts," in which the account holders allowed Fernandes and his co-conspirators to make cash deposits and withdrawals. (*Id.* at ¶¶ 9-10). The funnel account holders were paid a small fee for each transaction. (*Id.* at ¶ 9).[2] The transactions themselves were cash deposits in structured amounts under $10,000, allowing the

---

[1] Two funnel account holders, Michael Shannon and Calvin Valrie, later heard the recording and believed that the voice belonged to Fernandes. (PSR at ¶ 32).

[2] The fee averaged around $300 per transaction. (PSR at ¶ 9).

conspirators to avoid the CTR reporting requirement. (*Id.*). Deposits were often made at Bank of America branches in Massachusetts and nearby states, and withdrawals occurred at Bank of America branches in Los Angeles. (*Id.* at ¶ 12). In total, there were approximately 40 Bank of America accounts used in the money laundering scheme, and several million dollars were laundered. (*Id.* at ¶ 10).

For example, surveillance video depicted Fernandes and other co-conspirators making large cash deposits into the accounts of co-conspirator Kelly McClinton at a Bank of America in Massachusetts, followed shortly thereafter by large cash withdrawals from the same accounts at a Bank of America in Los Angeles. (*Id.* at ¶ 12-13). Fernandes himself, under the alias "Sanchez," controlled two bank accounts with balances of over $200,000 in 2012 and 2013. (*Id.* at ¶ 45).

### B. The Plea of Guilty

Fernandes was indicted on January 23, 2014, for conspiracy with intent to distribute cocaine. (Docket No. 3). A superseding indictment, adding charges of possession with intent to distribute marijuana and conspiracy to launder monetary instruments, was returned on June 26, 2014. (Docket No. 42).

Trial was scheduled to begin on Monday, January 11, 2016. In accordance with the Court's pretrial order, the government filed its witness list, exhibit list, proposed voir dire questions, and motions *in limine* on December 29, 2015. The government attorneys presumably prepared for trial over the holiday period and into the new year. On January 5, 2016, six days before the start of the trial, Fernandes requested a plea hearing. (Docket No. 256). The plea agreement was executed on Thursday, January 7, 2016, and Fernandes pleaded guilty that day. (Docket Nos. 275 and 276).

Under the plea agreement, the government agreed to recommend a two-level downward adjustment to the base offense level under the sentencing guidelines for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(b). The plea agreement did not indicate that the government agreed to move for a three-level reduction under § 3E1.1(b).

On January 7, 2016, Fernandes pleaded guilty to three counts of the superseding indictment. (PSR at ¶ 2). Count One charged conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846; Count Two charged possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii); and Count Three charged conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (*Id.*).

C.  **Sentencing Hearing**

The sentencing hearing was held on April 8, 2016. Fernandes received a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). (*Id.* at ¶ 77). His final total offense level was 34, yielding a guideline range of 168 to 210 months. (*Id.* at ¶¶ 89, 91, 146).

The government requested a 168-month sentence, which was at the low end of the guideline range. (Sen. Tr. at 6). Fernandes's attorney requested a sentence of incarceration of less than ten years. (*Id.* at 22).

Fernandes was sentenced to a 144-month term of incarceration on each count to be served concurrently, followed by a four-year term of supervised release. (*Id.* at 34).[3] The guideline range was 168 to 210 months, and therefore the sentence constituted a downward departure.

---

[3] The maximum term of supervised release was four years for Counts One and Two, and three years for Count Three. The Court imposed the maximum term of supervised release on all counts to run concurrently. (Sen. Tr. at 34).

(PSR at ¶ 146). The Court justified the departure, in part, due to the effect of the money laundering charge on the guideline range. (Sen. Tr. at 31). Moreover, the Court concluded:

> Defendant was a serious offender who ran a significant drug trafficking enterprise. However, the Court imposed a sentence somewhat under the low end of the guideline range because a larger sentence was not necessary to achieve the goals of sentencing[,] [p]articularly in light of the lack of evidence of violence and the fact that much of the drug quantity involved marijuana.

(Statement of Reasons at 3).

### D. Procedural Background

On January 10, 2017, Fernandes filed the present motion to vacate under 28 U.S.C. § 2255, contending that the government breached its contractual duty under the plea agreement and that his counsel provided ineffective assistance as to the application of U.S.S.G. § 3E1.1(b).

## II. Analysis

Because petitioner appears *pro se*, his pleadings must be construed more leniently than those drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a petitioner's *pro se* status does not excuse him from complying with procedural and substantive requirements of the law. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

### A. 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a petitioner may file a motion to vacate, set aside, or correct a sentence. The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). Petitioner bears the burden of establishing that he is entitled to relief under § 2255. *Id.*

### 1. **Breach of Contract**

Petitioner contends that "[i]n return for [his] pleading guilty and agreeing to the stipulation, the Government would not [move] the Sentencing Court for the denial [sic] of a three level reduction pursuant to United States Sentencing Guidelines § 3E1.1." (Pet'r Mem. in Support at 2). At sentencing, petitioner received only a two-point reduction for acceptance of responsibility. (Sen. Tr. at 5). He contends that the government breached its contractual duty in the plea agreement by objecting to a three-point reduction for acceptance of responsibility.

That argument is clearly without merit. Among other things, the plea agreement clearly states that "the U.S. Attorney agrees to recommend that the Court reduce by *two* levels Defendant's adjusted offense level under U.S.S.G. § 3E1.1." (Plea Agreement at 4) (emphasis added). Petitioner signed that agreement on January 7, 2016. (*Id.* at 10). At his Rule 11 hearing, he further stated that he understood the terms of the plea agreement, that it was the only agreement he had with the government, and that no one made him additional promises. (Rule 11 Hearing Tr. at 7-8). Moreover, the government did not move to have the Court "deny" a three-level reduction; petitioner was never entitled to it in the first place. It did object to the PSR, which incorrectly provided a three-point reduction for acceptance of responsibility. (PSR at 40).[4] But that objection was appropriate, as the PSR was in error.

Furthermore, petitioner received a below-guideline sentence; his sentence was a full 24 months below the low end of the guideline range. Petitioners challenging within-range sentences carry a heavy burden. *See United States v. Maisonet-Gonzalez*, 785 F.3d 757, 762 (1st Cir.

---

[4] Petitioner's Rule 11 hearing was held on January 7, 2016, four days before trial was scheduled to begin. (Gov't Opposition at 9). The Sentencing Guidelines state that to qualify for a three-point reduction for acceptance of responsibility, a defendant must provide enough notice of his intent to plead guilty to permit the government to "avoid preparing for trial," allowing "the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b).

2015). Therefore, a petitioner challenging a *below*-range sentence presumably must also carry a heavy burden. Considering that petitioner's sentence was below the guideline range, and that he has not provided any evidence that the government promised to recommend a three-point reduction, petitioner's breach of contract claim is without merit.

### 2. **Ineffective Assistance of Counsel**

Petitioner further contends that his counsel rendered ineffective assistance in violation of the Sixth Amendment because his counsel failed to advocate for the three-point reduction for acceptance of responsibility. Specifically, petitioner alleges that counsel rendered ineffective assistance by (1) failing to advise petitioner correctly regarding § 3E1.1(b), (2) failing to object to the Court's guideline calculation, and (3) failing to challenge the government's improper withholding of a § 3E1.1(b) motion. Because these allegations are substantively related, they will be addressed together.

#### a. **Legal Standard**

In order to establish a claim of ineffective assistance of counsel, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *United States v. De La Cruz*, 514 F.3d 121, 140 (1st Cir. 2008) (internal citations omitted). The Constitution does not guarantee to any defendant a perfect defense or a successful defense. *See Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012). Rather, "the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

There are two elements to an ineffective assistance of counsel claim: (1) deficient performance by counsel and (2) resulting prejudice. *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 687). An insufficient showing on either prong will defeat an ineffective assistance of counsel claim. *See e.g. Malone v. Clarke*, 536 F.3d 54, 64 (1st Cir. 2008). "There is no doubt that the cited two-part test also applies to representation outside of the trial setting, which would include sentencing and appeal." *Feliciano-Rivera v. United States*, 115 F. Supp. 3d 243, 249 (D.P.R. 2015) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992)).

To show deficient performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). That evaluation must be highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To show resulting prejudice, a petitioner must show that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is 'one sufficient to undermine confidence in the outcome.'" *Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007) (citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

There is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the petitioner makes an insufficient showing on one. *Id.* at 697. "If

9

it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* In addition, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### b. U.S.S.G. § 3E1.1(b)

Petitioner contends that he received ineffective assistance because counsel allegedly failed to pursue a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). However, petitioner does not explain or describe what it was that counsel allegedly failed to do, other than citing to an erroneous draft of the PSR. *See* Pet'r Mem. in Support at 4-6. Nor does he proffer an explanation that adequate representation would have resulted in a lower sentence. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the arguments, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Because petitioner failed to even sketch out an argument, this claim is without merit.

Moreover, a complaint that counsel failed to object in the specific manner that the client desired does not defeat the strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel is given tremendous deference regarding trial strategy. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). There is no reason to believe that counsel here

10

acted in a way that deprived petitioner of a fair sentencing hearing. *See id.* at 686. Indeed, it is a virtual certainty that any such objection would have been summarily overruled, because § 3E1.1(b) requires that a petitioner timely notify the government of his intention to plead guilty, which he did not do, and requires that the government assent and file a motion, which it did not. *See Jackson v. United States*, 2015 WL 9703718, at *4 (N.D. Tex. Nov. 24, 2015) (counsel not ineffective for failing to raise a frivolous objection) (citing *United States v. Preston,* 209 F.3d 783, 785 (5th Cir. 2000) (same)).[5] Petitioner was thus not entitled to a three-point reduction, even setting aside the terms of the plea agreement. *See United States v. Marroquin*, 136 F.3d 220, 224 (1st Cir. 1998) ("The aim of U.S.S.G. § 3E1.1(b)(2), after all, is to reward a defendant who enters his plea '*particularly early* in the case' and thereby relieves the government and court of significant burdens.") (quoting U.S.S.G. § 3E1.1, comment n.6). Petitioner has therefore failed to show that counsel's decision not to object was objectively unreasonable. *See Strickland*, 466 U.S. at 698-99.

Furthermore, petitioner cannot establish that counsel's failure to challenge the guideline calculation resulted in prejudice. Even without the additional three-point reduction for timely acceptance of responsibility, petitioner received a sentence 24 months below the low end of the guideline range. Petitioner fails to demonstrate a reasonable probability that his sentence would have changed had counsel advocated for the three-point reduction.

Finally, even if somehow the three-level reduction had been given, petitioner fails to establish a reasonable probability that his sentence would have changed. *See id*. at 694-95. Petitioner's sentence of a 144-month term of incarceration was already 24 months lower than the low-end of the guideline range of 168-210 months. An additional point reduction would have

---

[5] Petitioner's counsel did not contact the government to seek a plea deal until December 30, 2015, less than two weeks before trial was scheduled to begin. (Gov't Opposition at 3; Pet'r Reply at 2).

lowered petitioner's offense level to 33, which coupled with his criminal history category of II, would have produced a revised guideline range of 151-188 months.  The 144-month sentence would still have been lower than the low-end of that range.  Therefore, petitioner has satisfied neither the competency prong nor the prejudice prong of *Strickland* and his claim for ineffective assistance of counsel fails.

### III. Conclusion

Accordingly, for the reasons set forth above, petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

Dated: November 29, 2017

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge